IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CR-611-FL

| | | |
|---|---|---|
| DANNY CADE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| COUNTY OF BLADEN, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion for summary judgment. (DE 37). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons that follow, defendant's motion is granted.

## STATEMENT OF THE CASE

Plaintiff initiated this action in Wake County Superior Court on October 4, 2017, alleging defendant discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq., and wrongfully terminated him in violation of state law. On December 12, 2017, defendant removed the case to this court. After an uneventful period of discovery, including several extensions of time and a change of plaintiff's counsel, defendant filed the instant motion seeking dismissal of all plaintiff's claims. Defendant relies upon testimony from plaintiff; Gregory Martin ("Martin"), county manager of Bladen County; Mindie Bowman ("Bowman"), a paramedic for Bladen County Emergency Medical Services ("EMS"); Stephen Hester ("Hester"), a shift supervisor for Bladen County EMS; Glenda Bagwell ("Bagwell"), another shift supervisor for Bladen County EMS; Heather Ellis ("Ellis"),

1

the training officer at Bladen County EMS; and David Howell ("Howell"), EMS director for Bladen County. Defendant also relies upon certain exhibits introduced at plaintiff's deposition. Plaintiff responded in opposition, relying upon the same deposition testimony.

## STATEMENT OF UNDISPUTED FACTS

Plaintiff, who is black, began working as an emergency medical technician ("EMT") in the early 1990s. (Cade Dep. (DE 40-2, 43-1) 16:12–18:7). From 1995 to 2005, plaintiff was employed by defendant, but he left defendant and served for Sampson County EMS from 2005 to 2013. (Cade Dep. (DE 40-2, 43-1) 19:2–17, 20:25–21:6). From 1993 until 2017, plaintiff also worked part-time as an EMT for Elizabethtown Rescue Squad in Bladen County. (Cade Dep. (DE 40-2, 43-1) 19:24–20:4, 23:9–24:23, 37:17–19). In June 2015, plaintiff was hired again by defendant to serve part-time as an EMT-paramedic, and he became a full-time employee in August 2015. (Cade Dep. (DE 40-2, 43-1) 32:4–13).

In January 2017, plaintiff and Marcus Singletary ("Singletary"), another EMT, responded to an emergency call for a patient who had congestive heart failure and was possibly having a heart attack. (Cade Dep. (DE 40-2, 43-1) 128:7–22). While en route to the hospital, plaintiff called for assistance from another EMS unit. (Cade Dep. (DE 40-2, 43-1) 128:23–25; Bowman Dep. (DE 40-3, 43-3) 32:14–33:5, 35:16–20). Bowman met plaintiff's ambulance and came on board to help treat the patient, but the patient died in transit to the hospital. (Cade Dep. (DE 43-1) 129:15–130:18, Ex. 17; Bowman Dep. (DE 40-3, 43-3) 40:24–41:4).

After the call, Bowman and Singletary filed reports noting several deficiencies in how plaintiff treated the patient. (Cade Dep. (DE 40-2) Ex. 12, 13). Bowman reported that plaintiff claimed he gave certain medication and care to the patient where there was no evidence of this, plaintiff failed to suction the patient's lungs of fluid, and plaintiff did not properly administer

oxygen to the patient. (Bowman Dep. (DE 40-3, 43-3) 41:7–59:16; Cade Dep. (DE 40-2) Ex. 12). Singletary reported similar deficiencies. (Cade Dep. (DE 40-2) Ex. 13). Plaintiff testifies that there was nothing done wrong on the call. (Cade Dep. (DE 40-2, 43-1) 140:1–2).

Based on Bowman and Singletary's reports, defendant convened a peer-review committee to evaluate the call, including Carter; Howell; Ellis; Shonteia Keaton ("Keaton"), defendant's human resources director; and two other EMT-paramedics. (Cade Dep. (DE 40-2, 43-1) 145:25–146:15, Ex. 14; Ellis Dep. (DE 40-6, 43-5) 43:2–48:12; Howell Dep. (DE 40-7, 43-4) 19:23–20:15). The committee determined that there were several deficiencies in how plaintiff had cared for the patient. (Cade Dep. (DE 40-2) Ex. 18; Ellis Dep. (DE 40-6, 43-5) 47:7–48:12; Howell Dep. (DE 40-7, 43-4) 19:23–20:15). Howell then suspended plaintiff pending completion of an investigation by the North Carolina Office of Emergency Medical Services ("NCOEMS"), with plaintiff's continued employment contingent upon the findings of the state's investigation and the recommendation of Carter. (Cade Dep. (DE 40-2) Ex. 14, 15, 16; Ellis Dep. (DE 40-6, 43-5) 47:18–48:7). The suspension letter, dated March 2, 2017, cited plaintiff's failure to follow proper treatment protocol, negligent conduct, and falsification of patient records. (Cade Dep. (DE 40-2) Ex. 15). Plaintiff filed his EEOC complaint in the instant case on March 13, 2017. (Cade Dep. (DE 40-2) Ex. 23).

NCOEMS notified plaintiff on March 28, 2017, that it would investigate the matter. (Cade Dep. (DE 40-2) Ex. 19). Plaintiff met with the state disciplinary committee on July 12, 2017. (Cade Dep. (DE 40-2, 43-1) 170:22–171:14). On August 11, 2017, the state notified plaintiff that it had determined plaintiff failed to properly assess the patient, falsified information in the patient care report, and provided substandard or unacceptable patient care. (Cade Dep. (DE 40-2) Ex. 20). Based on its findings, the state reduced plaintiff's EMT-P credential to EMT-Advanced until

plaintiff completed an approved EMT training course and other remedial instruction. (Cade Dep. (DE 40-2, 43-1) 171:15–176:11, Ex. 20).

In a letter dated September 12, 2017, defendant informed plaintiff that, based on the findings by the state in the instant case, plaintiff's conduct violated county policies and plaintiff was terminated. (Cade Dep. (DE 40-2) Ex. 21, 22; Howell Dep. (DE 40-7, 43-4) 36:2–40:15). Plaintiff testified that the allegations that led to his suspension and discharge were manufactured, and that NCOEMS informed him during its investigation that that the allegations were trivial. (Cade Dep. (DE 40-2, 43-1) 162:19–23, 169:23–25).

Additional facts pertinent to the instant motion will be discussed below.

## COURT'S DISCUSSION

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine"

only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.    Analysis

    1.    Title VII Disparate Treatment

Title VII makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. "There are two traditional approaches to analyzing employment discrimination claims, historically referred to as the 'pretext' and 'mixed-motive' frameworks." Worden v. SunTrust Banks, Inc., 549 F.3d 334, 341 (4th Cir. 2008).

a. Mixed Motive

Under Title VII's mixed motive framework of proving disparate treatment, a plaintiff "demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m); see Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989) (plurality opinion). A plaintiff in a mixed motive case may prevail by producing direct or indirect evidence of discrimination. Desert Palace, Inc. v. Costa, 539 U.S. 90, 101–02 (2003); Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002). Such evidence includes "conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006) (quoting Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir.1999) (en banc) (citation and internal quotation marks omitted)). "Even if there is a statement that reflects a discriminatory attitude, it must have a nexus with the adverse employment action." Id. (citing Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir.1999)).

Here, plaintiff fails to come forward with facts demonstrating discriminatory animus by Carter or Howell in deciding to suspend or terminate him. Neither Carter nor Howell made any racially derogatory remarks. (See Cade Dep. (DE 40-2, 43-1) 186:3–8, 188:1–4). Plaintiff testified that Howell laughed at him when he complained about defendant's employees using racial epithets. (Cade. Dep. (DE 40-2, 43-1) 185:18–21). He testified that Carter treated black and white

patients differently but conceded that these patients may not have had the same medical problems and that he does not know how Carter treated his patients. (Cade Dep. (DE 40-2, 43-1) 225:22–227:8). Plaintiff also testified that, after employees were terminated, Carter would help white employees secure employment elsewhere but not black employees. (Cade Dep. (DE 40-2, 43-1) 194:2–195:14). None of plaintiff's testimony bears a nexus to Carter and Howell's employment decisions.

Plaintiff argues that he nonetheless could prevail under the mixed motive framework where he presents other evidence of discrimination by defendant. (Pl. Mem. (DE 41) at 3–4). While the court must be mindful that "[i]t is the decision maker's intent that remains crucial . . . [i]t is not unfair to observe that the corporate culture evince[s] a very specific yet pervasive aversion" related to the adverse employment decision at issue. Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 300–01 (4th Cir. 2010); Lettieri v. Equant Inc., 478 F.3d 640, 649 (4th Cir. 2007). In Merritt, the United States Court of Appeals for the Fourth Circuit held discriminatory attitudes had a sufficient nexus to the decision to fire plaintiff from a pickup and delivery position where "Old Dominion employees, of all ranks, seemed to share a view that women were unfit for that position." 601 F.3d at 300–01. In Lettieri, the court found a nexus between plaintiff's termination and a discriminatory attitude held by the relevant decisionmaker and other corporate officers towards female managers who had children at home and commuted long distances. 478 F.3d at 649.

Unlike Merritt and Lettieri, plaintiff's testimony simply does not establish a nexus between the alleged discriminatory attitudes in this case and the decision to suspend or terminate him. For example, plaintiff testified that defendant would not allow him to be a supervisor because he is black. (Cade Dep. (DE 40-2, 43-1) 190:7–12, 191:2–23, 212:6–215:12). He testified that he was forced to take an anger management course for using a curse word once while Hester, a white

paramedic, was never disciplined for his use of profanity. (Cade Dep. (DE 40-2, 43-1) 191:25–192:23). He also testified to other discrete issues, such as failure to recognize black employees with end of year awards. (Cade Dep. (DE 40-2, 43-1) 202:12–25). Plaintiff's evidence does not raise a "very specific yet pervasive aversion" to plaintiff's continued employment as a paramedic based on his race from which the court reasonably can infer discriminatory intent on the part of Carter or Howell. See Merritt, 601 F.3d at 300–01. Therefore, plaintiff has failed to carry his burden under the mixed motive framework.

            b.      Pretext

A plaintiff may also make a claim of disparate treatment under Title VII's pretext framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973). Under this framework, a plaintiff must produce evidence of "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Goode v. Cent. Virginia Legal Aid Soc'y, Inc., 807 F.3d 619, 626 (4th Cir. 2015). "In determining whether an employee was performing at a level that met the employer's legitimate expectations, it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). In proving different treatment of similarly situated employees in the disciplinary context, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." Lightner v. City of Wilmington, N.C., 545 F.3d 260, 265 (4th Cir. 2008).

If plaintiff makes this showing, the burden shifts to defendant to produce evidence of a "legitimate, nondiscriminatory reason" for the adverse employment action. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254–55 (1981). At that point, plaintiff has the "opportunity to

prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143 (2000) (internal citations omitted).

Defendant concedes that plaintiff is black and the county took two adverse employment actions against him by suspending him and terminating him. (Def. Mem. (DE 38) at 15). Howell, the individual who terminated plaintiff, acknowledged that plaintiff performed up to expectations while he was employed by defendant. (Howell Dep. (DE 40-7, 43-4) 18:3–19:6; see also Bowman Dep. (DE 40-3, 43-3) 22:12–14; Hester Dep. (DE 40-4, 43-6) 29:22–24). Finally, plaintiff testified that Hester, a white male, was not suspended or terminated for erroneously declaring a patient dead in 2015, and that Hester falsified reports as to when he arrived on scene.[1] (See Cade Dep. (DE 40-2, 43-1) 44:12–45:17, 46:11–17, 47:21–25, 52:2–24, 53:1–9, 53:23–54:4, 55:15–23, 58:7–16, Ex. 1, 2, 3). The court assumes for purposes of the motion that plaintiff has raised genuine issues of material fact as to whether he has made a prima facie case.

Defendant meets its burden by coming forward with legitimate nondiscriminatory reasons for plaintiff's suspension and termination. Bowman testified that, on January 27, 2017, plaintiff failed properly to use an endotracheal tube to help the patient breathe. (Bowman Dep. (DE 40-3, 43-3) 41:5–43:15, 48:16–49:10, 52:6–25). Bowman asked if any medication had been given, plaintiff responded he had administered two epinephrine pills, though all the epinephrine pills were still in the bag. (Bowman Dep. (DE 40-3, 43-3) 43:16–44:4, 48:9–15). Bowman testified that plaintiff failed properly to take a diagnostic of the patient's heart. (Bowman Dep. (DE 40-3, 43-

---

[1] Plaintiff also testifies that Singletary, another white co-worker, was not suspended for making false accusations against people and not putting his call reports in. (Cade Dep. (DE 43-1) 218:9–21). For purposes of making a prima facie case, plaintiff fails to come forward with sufficient evidence for the court to reasonably infer that Singletary is similarly situated with respect to plaintiff, where Singletary did not also allegedly negligently administer medical care.

3) 46:14–22, 59:1–11).  Singletary, who was also on the call with plaintiff, and Bowman both filed reports identifying deficiencies in the care administered by plaintiff to the patient.  (Cade Dep. (DE 40-2) Ex. 12, 13).

A peer review committee was convened to review the call and determined that a state investigation was necessary regarding whether plaintiff failed to follow proper treatment protocol, negligently performed his duties, and falsified patient records.  (Cade Dep. (DE 40-2) Ex. 15).  Defendant suspended plaintiff without pay pending investigation of these issues by the state, and it explained that plaintiff's continued employed with the state would be contingent on the state findings of investigation.   (Cade Dep. (DE 40-2) Ex. 15, 16).   The state investigation found numerous deficiencies in plaintiff's performance on the job, determined that plaintiff falsified details of the call, and revoked plaintiff's EMT-P credential.  (Cade Dep. (DE 40-2) Ex. 20).  Relying on the same factual findings as the state, defendant terminated plaintiff's employment for violating county policy.  (Cade Dep. (DE 40-2) Ex. 21, 22).

Plaintiff's sole evidence bearing on pretext is his own testimony that the allegations leading to his suspension and discharge were manufactured, and that NCOEMS informed him during its investigation that the allegations were trivial.  (Cade Dep. (DE 40-2, 43-1) 162:19–23, 169:23–25).  "[W]hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."  Laing v. Fed. Exp. Corp., 703 F.3d 713, 722 (4th Cir. 2013) (quoting Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000)) (holding plaintiff failed to show pretext where all she had proved was that she disagreed with the outcome of defendant's investigation into whether she falsified records).  Moreover, it is well-established law in this circuit that a plaintiff's "own assertions of

discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." Adams v. Trustees of the Univ. of N.C.-Wilmington, 640 F.3d 550, 560 (4th Cir. 2011) (alterations omitted) (quoting Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989)); Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998) (citing Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988)); see Gairola v. Com. of Va. Dep't of Gen. Servs., 753 F.2d 1281, 1288 (4th Cir. 1985). In the face of substantial evidence that the decision to terminate plaintiff was based upon the events of January 27, 2017, plaintiff's testimony is insufficient as a matter of law to demonstrate defendant's decisions and factual findings, however incorrect or unwise, are a pretext for discrimination.

Plaintiff raises several arguments that he has otherwise demonstrated pretext, but none are persuasive. First, plaintiff relies upon the same testimony used in support of his mixed motive approach regarding "evidence of racial attitudes experienced by the [p]laintiff while working for the [d]efendant." (Pl. Mem. (DE 41) at 7). As discussed above, plaintiff's testimony bears no nexus to plaintiff's suspension or termination, and therefore does not prove the legitimate nondiscriminatory reasons offered by defendant for suspending or terminating plaintiff are pretextual. Second, plaintiff argues that the state did not mandate plaintiff's termination, but defendant proceeded to terminate him anyway in retaliation for filing his EEOC complaint. (Pl. Mem. (DE 41) at 7). For the reasons discussed below, the court rejects plaintiff's retaliation claim. Third, plaintiff argues that Hester was not disciplined for similar conduct. (Pl. Mem. (DE 41) at 9). However, defendant concluded in Hester's case that erroneously declaring the patient dead did not delay the patient's treatment because Hester and plaintiff had arrived at the scene at about the same time, and that the patient had been transported properly to Wilmington for specialized care.

(Cade Dep. (DE 40-2) Ex. 4). For all these reasons, the court grants summary judgment on plaintiff's claim for disparate treatment under Title VII.

2.      Title VII Retaliation

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). As with a claim of disparate treatment, "[p]laintiffs may prove these violations either through direct and indirect evidence of retaliatory animus, or through the [McDonnell Douglas] burden-shifting framework." Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015).

"To establish a prima facie case of retaliation in contravention of Title VII, a plaintiff must prove (1) that []he engaged in a protected activity, . . . (2) that [his] employer took an adverse employment action against [him], and (3) that there was a causal link between the two events." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (internal quotations and citations omitted). "An employee may establish prima facie causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." Strothers v. City of Laurel, Maryland, 895 F.3d 317, 335–36 (4th Cir. 2018) (internal citation omitted). The "temporal proximity must be very close." See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (per curiam); King, 328 F.3d at 151 n.5 (finding two and a half months sufficiently long so as to weaken significantly an inference of causation, but enough to make a prima facie case where employment decisions would likely be made at the end of a school year); Williams, 871 F.2d at 454, 457 (finding plaintiff proved prima

facie causation where three and a half months elapsed between the protected activity and the adverse employment action). Where temporal proximity is missing, "evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." Lettieri, 478 F.3d at 650.

If plaintiff proves a prima facie case, the burden shifts to defendant "to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions." Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). Once defendant meets its burden, plaintiff bears the burden of showing that defendant's reasons for the adverse action "mere pretext for retaliation by proving both that the reason was false, and that discrimination was the real reason for the challenged conduct." Id.

Defendant concedes that plaintiff filing his EEOC complaint in March 2017 is a protected activity, and that it took adverse actions against plaintiff by suspending him and terminating him. (Def. Mem. (DE 38) at 24–25). However, plaintiff fails to prove a causal connection between filing his EEOC complaint and his suspension. Plaintiff received written notice of his suspension without pay on March 2, 2017. (See Cade Dep. (DE 40-2, 43-1) 151:20–152:12, Ex. 15). On March 13, 2017, plaintiff filed his EEOC complaint, expressly identifying his suspension as the basis for the charge. (Cade Dep. (DE 40-2, 43-1) 215:21–216:5, Ex. 23). Where plaintiff's suspension caused the EEOC charge, as opposed to the EEOC charge causing the suspension, a retaliation claim does not lie.

Plaintiff is equally unsuccessful in demonstrating a causal connection between his EEOC complaint and his termination. Plaintiff was terminated on September 12, 2017, almost six months after the filing of his EEOC charge. (See Cade Dep. (DE 40-2, 43-1) 176:15–177:19, Ex. 21). In this instance, there is no temporal proximity between his EEOC charge and his termination.

Moreover, plaintiff does not present evidence of recurring retaliatory animus from which the court may infer causation. Plaintiff's suspension, imposed prior to filing his EEOC complaint, continued "until all review and investigative procedures ha[d] been completed by [NCOEMS]." (Cade Dep. (DE 40-2, 43-1) 151:20–152:12, Ex. 15). As part of plaintiff's suspension, defendant made clear that plaintiff's "continued employment with Bladen County will be contingent upon the findings of [NCOEMS] and the recommendation of Bladen County Medical Director, Dr. Kenneth Carter." (Cade Dep. (DE 40-2, 43-1) 151:20–152:12, Ex. 15). Based on the findings of NCOEMS, defendant terminated plaintiff's employment for violating county policy. (See Cade Dep. (DE 40-2, 43-1) 176:15–177:19, Ex. 21).

Plaintiff asserts retaliatory animus because NCOEMS merely reduced his EMT credential from EMT-P to EMT-Advanced, and that the state did not mandate his termination. (Cade Dep. (DE 40-2, 43-1) 164:9–165:13, Ex. 20). Therefore, plaintiff speculates, defendant must have terminated him because of the EEOC complaint. (Pl. Resp. (DE 41) at 10). Plaintiff's argument is unpersuasive. Although the punishments meted out by the state and defendant for plaintiff's conduct were different, the record indicates that both punishments were based upon the state's factual findings. Plaintiff fails to come forward with any genuine issue of material fact as to whether his termination was caused by his EEOC complaint. Where plaintiff fails to make a prima facie case,[2] the court grants summary judgment on plaintiff's Title VII retaliation claim.

3.     Wrongful Termination

Under North Carolina law, an employee-at-will may bring a cause of action against his employer for terminating him in violation of public policy. Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331 (1997). The North Carolina Equal Employment Practices Act

---

[2]     In the alternative, plaintiff fails to establish that the reasons given by defendant for his termination were a pretext for retaliation.

("NCEEPA") provides "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees."  N.C. Gen. Stat. § 143-422.2(a); see also Bigelow v. Town of Chapel Hill, 227 N.C. App. 1, 13 (2013) ("A retaliatory firing based upon an employee's filing of a claim of discrimination in the workplace clearly violates public policy and could support a wrongful discharge claim.").  The court applies the same standards of proof for a wrongful termination as it does under Title VII.  N. Carolina Dep't of Correction v. Gibson, 308 N.C. 131, 136 (1983) ("[W]e look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases.").

For the same reasons that the court concludes that summary judgment is warranted for plaintiff's Title VII claims, it likewise concludes summary judgment is appropriate for plaintiff's state law claim of wrongful termination.[3]

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 37) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 11th day of February, 2020.


_____
LOUISE W. FLANAGAN
United States District Judge

---

[3]     The court does not reach defendant's argument that plaintiff's wrongful termination claim is barred by governmental immunity.  See Meyer v. Walls, 347 N.C. 97, 104 (1997) ("Under the doctrine of governmental immunity, a county is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity.").